Good morning. I'm Martin Colletti, and I represent Appellant, Cosmetic Ideas, Inc. Your Honors, the issue squarely before the Court is not really the issue of the broad application approach versus the narrow registration approach, but something more fundamental, which is, is Section 411A of the Copyright Act jurisdictional? Well, if that's the case, then shouldn't we just vacate submission and wait until the Supreme Court answers that question, in the case they just granted cert on? The oral argument tomorrow is in Reed Elsevier. Tomorrow? Tomorrow. So what are we doing here? Arguing that the chances are that, it's hard to predict the United States Supreme Court, however, in this case, I think Reed Elsevier is an unusual case in that the, both, when it was, when the petition was made for certification for certiorari, there was a brief in support of it by the petitioner. The respondents, both sets of respondents, supported the brief, supported the granting certiorari. On the merits, both sets of respondents supported reversing the Second Circuit. The amici, the United States and other amici, also supported reversing the Second Circuit. The court, the United States Supreme Court had to find another attorney, not, had to appoint counsel, Professor Merritt from Ohio, to support the judgment. So I don't think that the judgment is. Throwing away your alternative argument that even if it is jurisdictional, the very fact that you did all you could to file constituted the registration? The important thing is that. You do have a circuit law in your favor. We do have a circuit law in our favor. We have the Fifth Circuit. What goes against you? Well, we have the Fifth Circuit in our favor. And we have the Ninth Circuit, actually, in a way, in our favor as well. Because if you go back to the Roth greeting cards case, which is under the old act, the 1909 act, Lori Rodkin, a central district California case, which. I'm not asking why you threw away the argument. You opened up by saying, suppose you lose, and Professor Merritt wins, and there is jurisdiction. You're out of court. Is that what you're saying? No. If there is jurisdiction, then we should be back in the district court. We don't have to. If we decide on the alternate ground, we don't have to wait for this agreement. That's correct. You could. And as I said, the Ninth Circuit, I said, in the Roth greeting cards case, it's characterized as a jurisdiction question. But when you go back and look at the case, it specifically said, the district court thought that this was a jurisdictional thing. It's not. And the other thing that one can look at by looking at the Tenth Circuit, La Resolana case, or the Eleventh Circuit, NGB case, and the GB homes on which it relied, is that it really – there was an opportunity to cure. In other words, it was something that could be fixed. In NGB, for example, the court – the district court dismissed the case and said, file another case. Well, instead, they filed an amended complaint. And it – Have you gotten your registration now? Yes, I have a registration. So don't you just want to file an amended complaint? We have. But how far will it relate back? I thought you answered that question. It relates back to the registration. But the thing about it is that will the – in other words, is the – if the registration only goes back to that – To the date that you registered.  Right. But how far back can the claims? Because – just because if the claims started more than the statutory period, one can collect damages for the last three years. So the question is, does it go back far enough? In other words, is going back to the registration far enough? But how could it go back any – I mean, the statute answers the question. How could we interpret the statute to say that the registration extends even earlier than what the statute provides? No, it's – the question is, is the registration within the limitations period or does the registration come later in the limitations period or not? Let me see if I've got this. I'm not sure I'm following you already. I'm not either. You get your registration. Yes. You relate back to what date, the date you applied? Yeah, that's correct. And your problem is, by the time the agency sends you the papers so that you can get into court, say the first year or some period of time, is more than three years in the past. So you only get damages for the most recent three years. And the time when this jewelry was a big hit on Home Shopping Network could have been four years ago. Right. If you will, Your Honor, when you file it – when you file the second case, when you refile, you only get to go back three years for the damages. I'm trying to make sure I understand your argument. I'm not trying to raise a theory. The idea is once you get your notice of registration, then you can sue, but you can only go back three years even though your copyright relates back to when you applied four years ago, hypothetically. Yes, Your Honor. And if the big hit on Home Shopping Network was from four years ago to three years ago and then it died, yep, you've got infringement. It relates back. Everything's fine except the statute of limitations bars your damages from when the damages occurred. Yes, absolutely right. So I understand your theory? But is that question before us? I mean, this is all very interesting from a hypothetical standpoint, but the issue that brings you here is you got bounced out of court because the district court thought it didn't have subject matter jurisdiction. Right, and the district court should have allowed us to amend. And you got your registration within three years, right, of the original day you mailed in the form? Yes, but we don't know if that was within three years of the first infringement. But we're not there yet. All we're trying to decide is whether or not your case lives and gets to go forward in the district court. You can raise these arguments about when the statute of limitation begins, what period damages can be collected for. Those questions are not before us, are they, counsel? I certainly didn't see anything about this in your brief. The more narrow issue is whether or not we should have stayed in the district court. Right. So let's talk about that issue. That's the issue that I'd like to hear argument on. I was just answering the question. All right. On that issue, you have a very thoroughly reasoned Tenth Circuit case against you, and you've got Nimmer and a Fifth Circuit case for you, but neither Nimmer nor the Fifth Circuit case give as much reasoning as the Tenth Circuit case. Why is the Tenth Circuit case wrong? Because the Tenth Circuit concentrates and tries to use a very vaunted textual argument and says there's nothing in here that says the application is good enough. You have to actually have registration. But then it makes the leap of saying that's jurisdictional. But it's not jurisdictional. It's a claims processing rule, as Arbaugh says. And that case, although respondents sort of dismiss it, everyone who's discussing in Reed Elsevier is going back to the United States Supreme Court's pronouncement in Arbaugh. And the fact is it's like a filing fee. And the fact is that, for example, the Tenth Circuit, in its reasoning, relied on M.G.B. Holmes. M.G.B. Holmes was a case in which there was a problem with the registration, and as I said, there was a refiling of the case. Rather than a refiling, there was an amended complaint. If it had been jurisdictional, the court could not have considered that amended complaint because there was no jurisdiction at the beginning. And that's one thing that respondents say. If there's no jurisdiction at the outset, then there can't be any decisions later. So if you can amend to cure this defect, it's not a jurisdictional defect. It's a claims processing rule. So it's still mandatory. Well, what about the policy argument for the Fifth Circuit position that why should the holder of the claim be bound by the slowness of the registration office? I think it's an excellent argument. I agree wholeheartedly with the Nimmers, father and son, and I disagree with Goldstein and Patry, both of whom take the opposite view. But when you look at the decreased importance of formalities, you look also in the Federal Register there was something. The United States Copyright Office has changed its rules. Now if you put in an application, you're waiting more than six months, and you say, I've got to have it for a lawsuit,  So you're no longer held quite as hostage. But still, you shouldn't be held hostage at all. To bureaucratic slowness. I'll reserve. Thank you, counsel. Good morning, Your Honors. This is Vicki Land representing the affilees. I would like to address the jurisdictional issue, if I may, and I will be brief. Is there any reason we shouldn't wait for Reed L. Severe to come down? On the issue of whether it is jurisdictional or not, I think the Supreme Court is likely to rule on that issue. So we should wait. But in terms of the facts of this case, I think it is important to understand what this case is not. A lot of the case law deals with facts where the plaintiff attempted to amend in the middle of the litigation or was allowed to amend the facts pleaded in the complaint. But doesn't that turn on the argument that counsel was just making on whether or not it's a claims processing rule as opposed to a jurisdictional requirement? Yes, Your Honor, it does. And, of course, our position is that it is jurisdictional and that the Tenth Circuit basically got it right in the Resolana Architects case. So if you will permit, I will go through very briefly the reasons why I believe that to be the case. And particularly in this case, where in this case the copyright issued after the dismissal, not in the middle of it, not in the middle of the case, and the second suit was filed after the dismissal, not in the middle of the case. So there is a second Federal action that has now been filed? That's correct. Before that, it's been sent to the same judge, and it has been stayed pending this Court's resolution of the issues on appeal. The reason that we believe that the law Resolana Tenth Circuit case got it right is because it really relies heavily and properly on the plain language of the statute, where Section 411A itself says that no action for infringement shall be instituted until registration. Help me with something that's been in my mind. You've got a well-reasoned Tenth Circuit case one way. You've got the Nimmers and Fifth the other, and you've got us without a decision one way or the other yet. So precedent doesn't control what we do today. It does not. Now, I looked at 410, and it was hard for me to make sense of 410D, which says that it has this language that the effective date is the day on which the copyright is later determined to be acceptable, or the effective date of a copyright is the day on which an application, which is later determined by the Register of Copyrights or by a court of competent jurisdiction to be acceptable, has been received in the Copyright Office. Now, that does two things. One is it causes the date to relate back. The other, which interests me, is this language, or by a court. I wonder if what that means is, to make any sense, 411 can't bar the filing in a court in the way that the Tenth Circuit says, because under 410, the court might decide that the Copyright Office should have found the application acceptable. I don't know as much about copyright law as you do, so I want you to educate me. All right. If I'm understanding your question correctly, I believe that the statutory scheme all ties together and that the language that you're referring to in 410D refers back to other statutory provisions where the court is allowed to make the determination of infringement. For example, in the second sentence of 411A, if the ---- You mean the refused sentence? The refused sentence. There, the court can make the initial determination. There are other exceptions in the Act in which the court can make the initial determination. Now, where the nimmers had a problem is that if you use the Tenth Circuit interpretation, you can file if the Copyright Office accepted your application and registered your copyright, and you can file your lawsuit if they rejected your application and refused your copyright, but you can't file your action if they haven't done one or the other yet. So you can be in a situation where it's too soon, too soon, too soon, too late because the statute of limitations is run on all your damages. And I had the same problem as the nimmers in the Fifth Circuit did. I can't make sense of it. I believe that this is one of those cases where if you were writing the law, Your Honor, or Mr. Nimmer were writing the law, that perhaps it would come out another way, but this is the statutory scheme that Congress devised. Well, we have to read it and figure out what it means. All right. And if I could just briefly address the particular statute. But if you're right in light of what counsel just said, that they changed the rules, that you can, in effect, get a ruling within six months, that would be inconsistent with this congressional scheme that you're describing, right? How could the agency, in effect, overturn this scheme that you're talking about? This is simply the fact that the Copyright Office is, by statute, given the opportunity, as other regulatory agencies are done in other contexts, of having a first look to weigh in on the copyrightability and the ownership of the copyright before it goes to litigation. And the defendants are faced with a rather massive expenditure of funds to get rid of the litigation, as was done here. Whereas there were, before just recently, expediting processes, which indeed the plaintiff here took advantage of, finally, and got the copyright and got it issued. But I'm not sure you're answering the concern that we're raising, which is what Nimmerer called the legal limbo or the jurisdictional black hole in the statute. There is a legal limbo in the other direction as well, Your Honor. If the suit can be filed just at any moment of the choice of the applicant, then what is the district court to do? Is it supposed to stay the action waiting for the Copyright Office to rule? Is it supposed to? What would be the matter with that? In mixed habeas petitions, there's often a stay of the federal petition while the petitioner exhausts in state court. Why wouldn't an analogous procedure be appropriate? Again, it's a question of whether it's jurisdictional or not. We believe that the statute does not permit of that. So there'd be nothing wrong with that procedure if the statute were not interpreted by us to be jurisdictional. Correct. I'm having a hard time squaring your answer, though, with 411A, because if the Copyright Office refuses the registration and the statute says the district court can nonetheless entertain the lawsuit in lieu of a registration, the district court must have jurisdiction in that instance, even though the Copyright Office has exercised its decision. By statute, though, that is the big difference. It goes without saying that it's the role of Congress to set policy in this area, and the Hartford Underwriters Supreme Court case a long time ago established that. If I can go through briefly the statutory sections that I believe hang together that establish that this is jurisdictional and should not be determined to just be a rule that you can deal with by. In order to read these things, one of the learned hand techniques that I learned from Henry Hart is try to avoid interpretations which create absurdities that no Congress, no matter what its policy, could have intended. Here I'm trying to think not of something like Old Tale of Two Cities that continues to sell in the bookstore forever. I'm thinking of something like a hit, something that has immediate popularity but comes and goes. The hit period may only last a few months, like a bestseller that goes out of print and you can never get it again. For a hit, it doesn't make sense to me that if the Copyright Office gets backed up the way, say, immigration and naturalization gets backed up on asylum cases, that Congress could have intended that no one whose copyright is infringed could ever get damages because they'd be barred by limitations before the copyright was either registered or refused. I don't understand why Congress would do that. Your Honor, whether there are ever any tolling provisions on the statute of limitations is a question that is not before the Court. That's not tolling. I can't see why they'd be tolling, actually. I would agree with you on that. Give me a reason that I can attribute to a rational Congress for writing the statute that way. Because Congress was trying to establish a framework to encourage people to register their copyrights, to not sit around and wait, but to get them to the Copyright Office. Okay, so everybody piles in there and they register them. And then because all these people are doing just what Congress wanted, it's taking the Copyright Office, hypothetically, more than three years to get to their papers. Your Honor, it's simply not a situation with which we're confronted. The infringements on their hits are more than three years in the past before they can file suit. Why would a rational Congress intend that? I don't think that they did intend it, and I don't think that it was contemplated or is contemplated now that the process takes that long. And it's a hypothetical situation that isn't before us and isn't before the vast majority. So then why should we read it as a policy? Why should we read it as a jurisdictional issue? Because Congress has set... The incentive to register is still there. And Congress has fostered that incentive by giving this relation back and by giving attorneys fees and statutory damages. But the language itself just shouldn't be ignored, that the language is jurisdictional, that no action for infringement shall be instituted until registration has been made. And the definition of registration in Section 101 is that the registration has been done, not that the application has been done. It reminds me of the distinction between void and voidable. Section... It doesn't use the magic word jurisdictional. It doesn't say no court shall have jurisdiction. It does not. But it does distinguish between the words registration and application, Your Honor. It does. And one of the principles of statutory interpretation is to when different words are used is to give them different meanings. Well, we'll probably wait for Elsevier to help us with this. All right. Your Honor, if I could just finish in a couple of sentences here. Your time is up, so go ahead and wrap it up. Thank you. The not only would it, would the interpretation for which the plaintiff contends not give meaning to two different words used in the statute, but also it would write out whole sections of the statute. It would write out the whole section, second sentence of 411A. Why is it it would render it meaningless? Why is it there if application is all you need? It would write out the special handling provisions and render them meaningless because there would be no need for such special handling if you can bring an action whenever you want. It would write out 410A, which says after examination, the register of copyrights shall register the claim. It would write out Section 501, which requires registration before seeking an injunction, not just application. So those, the statutory scheme holds together, and it is consistent with the principle of fostering a system where you have an expertized agency that has knowledge in the certain area. It's not as rigorous as patent, but it's there.  Thank you, Your Honor. We have a few seconds, counsel. Thank you. Your Honor, speaking of black holes, the statute happens to be like Swiss cheese, full of holes. And another example is foreign claimants. Foreign claimants aren't subject to it. Section 106A claims for integrity and attribution, not subject to this. So I think that you're correct in your suggestion that why not just put a stay on it while that deficiency is cured? It's a fine idea. I'm sorry. What did you say? Having a stay, for example, or why couldn't there be a stay waiting for the Library of Congress to get the application? It's a fine idea. The other thing is that the goals are still met, because the goals are to increase the Library of Congress's collections, and the ideas are to create a record of such things as who the author is and things like that. Those goals are still met, even if the registration certificate takes a bit longer to process. And the fact is that the examination process, I think the Respondent has put much emphasis on it. If you go and look at your own decision in Roth Reading Cards, it doesn't paint a very rosy picture of the examination process. It ain't the Patent Office. I'm sorry? It ain't the Patent Office. It's definitely not. Roth Reading Cards makes that very clear. We got that. Thank you. Thank you, Counsel. Okay. Cosmetic Ideas v. Home Shopping Network is submitted. IAC Interactive. We'll hear Mobayan v. Standard Insurance.
judges: Trager, Kleinfeld, Tallman